# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case. No. 13-CR-208-JHP |
| ) | |
| MICHAEL LAWRENCE LEFALL ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

Before this Court is the motion of Defendant, Michael Lawrence Lefall,[1] for a new trial in accordance with Rule 33 of the Federal Rules of Criminal Procedure. [Doc. No. 142]. Lefall alleges that he was denied effective assistance of counsel at trial. The government argues that his counsel's performance did not fall below the objective standard of reasonableness required to grant a new trial, and the errors counsel did commit were not so significant that they altered the jury's verdict. [Doc. No. 150]. The government also argues that the Motion for New Trial was filed out of time pursuant to Rule 33(b)(2).

Based upon the record before the Court, including the parties briefing and presentations at the evidentiary hearing, the Court finds that Lefall received ineffective assistance of counsel, and that the delay in the filing of the Motion for New Trial was due to excusable neglect. For the reasons stated herein, the Court therefore GRANTS the Defendant's Motion for New Trial.

---

[1] At the evidentiary hearing regarding the Defendant's Motion for New Trial, the Defendant corrected for the record the spelling of his last name. Though the Defendant's name is spelled "Lefall" throughout the record, he represents to the Court that it is correctly spelled "Lefall." The Court will use the latter spelling for purposes of this order, though it notes the government's objection to the change in spelling.

1

**BACKGROUND**

On November 5, 2013, a federal grand jury returned an Indictment against three defendants, Michael Lawrence Lefall, Crystal Lynn Kite, and Jessica Jo Glore. The indictment charged the defendants with Count One: drug conspiracy in violation of 21 U.S.C. § 846, Count Two: attempt to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and § 841(b)(1)(B)(viii), and Count Three: possession with intent to distribute methamphetamine in violation of § 841(a)(1) and § 841(b)(1)(C).

On November 25, 2013, Lefall was arraigned, and Magistrate Judge T. Lane Wilson appointed Joseph Ruffin to represent him. [Doc. No. 34]. The Court entered a Scheduling Order, requiring pretrial motions to be filed by December 9, 2013 and setting the Jury Trial for January 21, 2014.

Three days prior to the Court's pre-trial motions deadline, on December 6th, Glore filed a Motion in Limine, a Motion to Suppress, and a Motion to Exclude Expert Testimony. [Doc. Nos. 40, 42, & 43]. Kite also filed a Motion to Suppress and a Joinder in Glore's Motion to Exclude Expert Testimony. [Doc. Nos. 44 & 45]. This Court referred those pretrial motions to Magistrate McCarthy. [Doc. Nos. 47 & 52].

Then, on the final day to file pre-trial motions, December 9, 2013, Lefall filed motions to continue the trial and to amend the scheduling order. [Doc. Nos. 48 & 50]. In the motion to continue the trial date, Ruffin stated that he had a family trip planned to Mexico City from December 18, 2013, through January 9, 2014. [Doc. No. 48]. He further stated on behalf of his client:

> Counsel has not had adequate time to prepare for the case at hand. Counsel has a heavy caseload. In particular, he has been participating in a multi-defendant, mega-discovery case, CR 13-63-F in the Western District of Oklahoma. Counsel has also been hampered in the investigation of this case by the voluminous

discovery, difficulty in viewing and listening to the discovery because of technical difficulties. Also, the recent inclement weather has added to the frustration of spending adequate time with the defendant.

[Doc. No. 48].

Ruffin requested a continuance until the February trial docket to "allow adequate time for the defendant to assist counsel in the preparation of his case and to allow counsel to explore all avenues to file motions as needed and plan strategy as required." *Id*. In a separate motion, Ruffin requested that the Court amend the Scheduling Order to provide additional time to file pre-trial motions. In support of the motion, he stated:

> To be provided effective assistance of counsel, Lefall's counsel needs to have additional time until December 17, 2013, to file motions. . . . Defendant also requests that the . . . trial date be extended until after January 9, 2014.

[Doc. No. 50].

On that same date, Lefall also filed a joinder in Glore's Motion to Supress and Motion to Exclude Expert Testimony. [Doc. Nos. 49 & 51]. Kite objected to Lefall's motion to continue the jury trial, stating that her counsel would be out of state in February. Alternatively, Kite moved to sever her trial from that of Lefall's. [Doc. No. 55].

The Court denied Lefall's motion to continue the trial set for January 21, 2014, but granted the motion to extend the deadline for filing pre-trial motions, extending the deadline to December 17, 2013. [Doc. No. 57]. Despite this extension, Ruffin filed no further pre-trial motions on behalf of his client.

On December 19, 2015, Ruffin filed a Motion to be Excused from Court Proceedings, which the Court granted. [Doc. Nos. 65 & 69]. In the motion, Ruffin stated that he would be in Mexico City with his family on the date of the pretrial hearing set for the next day, December 20, 2013. He proposed that CJA panel attorney Beverly Atteberry be allowed to appear for the

Defendant at the pretrial hearing and any further hearings as necessary. Ruffin further stated that he would be "prepared to try the case on January 21, 2013, and will return to work on January 10, 2014." [Doc. No. 65].

On December 30, 2013, Magistrate Judge McCarthy held a hearing regarding the pre-trial motions that defendants Glore, Kite, and Lefall filed. At the hearing, Glore, through her counsel, and Lefall, through his substitute counsel, Ms. Atteberry, each moved to withdraw their pre-trial motions. On January 3, 2014, Glore pled guilty to a felony information. [Doc. Nos. 92 and 85].

Leading up to trial, the government filed a Notice of Intent to Offer Evidence Pursuant to 404(b), to which Lefall did not object. [Doc. No. 109]. While the government filed a trial brief, proposed jury instructions, and proposed voir dire, Lefall did not. [Doc. Nos. 106, 107, 108].

The jury trial commenced on January 21, 2014, and on January 24, 2014, Lefall was convicted as charged in the Indictment.

Then, on July 13, 2014, Lefall filed a Motion for New Trial, alleging ineffective assistance of counsel. [Doc. No. 142]. After Lefall and the United States fully briefed the motion, an evidentiary hearing was held on October 22, 2014. [Doc. Nos. 150, 154, 163]. Following the hearing, both parties submitted supplemental briefs [Doc. Nos. 169, 170] and responses thereto [Doc. Nos. 172, 173]. The Motion for New Trial is now properly before this Court for consideration.

## DISCUSSION

Rule 33(a) of the Federal Rules of Criminal Procedure provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." In order for a court to grant a defendant a new trial based on ineffective assistance of counsel, the defendant must satisfy the two-part test the United States Supreme Court established

in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must [demonstrate] that counsel's performance was deficient," which requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. Second, the defendant must prove that counsel's deficient performance prejudiced the defense such that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 687, 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In addressing an ineffectiveness claim, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

I. **Defendant's Alleged Grounds for a New Trial**

In Lefall's motion, he alleges Ruffin, his attorney at trial, "was continuously ineffective and therefore deprived him of his right to competent counsel pursuant to the Sixth Amendment of the United States Constitution." [Doc. No. 142 at 1]. Lefall points to numerous factors that he alleges indicate he received ineffective assistance of counsel:

(1) Ruffin failed to file a response to the government's 404(B) notice, and when the Court asked if he wanted a hearing on the issue, Ruffin declined. [*Id*. at 4].

(2) When a witness on the stand referred to Lefall as an "ex con," Ruffin stated that he would not move for mistrial but "maybe he should." [*Id*. at 5].

(3) Ruffin failed to file substantive pre-trial motions on behalf of Lefall, and Ms. Atteberry withdrew the two motions he joined when Ruffin was not able to attend the motions hearing, due to his trip to Mexico. [*Id*.].

(4) Ruffin failed to file a trial brief, proposed voir dire, or proposed jury instruction. [*Id*.].

(5) Ruffin failed to sufficiently consult with Lefall prior to trial. [*Id*.].

(6) In his closing argument, Ruffin presented to the jury that in fact Lefall was a pimp in order to explain why he possessed large amounts of cash. When Ruffin told Lefall of his "pimp defense" prior to trial, Lefall objected to the strategy. [*Id*.].

(7) Ruffin failed to investigate evidence that would refute the government's witnesses' claims regarding when Lefall came to Tulsa from California. [*Id*.].

(8) Ruffin refused to call a potential witness because he had failed to interview her prior to trial. [*Id*. at 6].

(9) Ruffin did not properly explain the government's plea offer to Lefall.

(10) At trial, Ruffin had not reviewed all the discovery the government provided him. [*Id*. at 6].

(11) Ruffin was unprepared for trial, and consequently, issues in the case seemed to confuse him. [*Id*.].

Of the many factors that Lefall alleges, three stand out to this Court as most significant to the issue of ineffective assistance of counsel: the alleged failure to present potentially exculpatory evidence, the failure to review all of the discovery produced by the government, and the presentation of the so-called "pimp defense" to the jury.

**A. Failure to Present Potentially Exculpatory Evidence**

Lefall testified that at trial Ruffin told Lefall that his co-defendant, Glore, could not testify because he had not had a chance to interview her. [Evid. Hrg. 68]. When Lefall suggested presenting proof of his student loan check in order to explain pictures of him with large amounts of cash, Ruffin told him they could not use the student loan check because Ruffin had not

6

provided it to the government in time. [*Id*. at 71-73]. Lefall asked Ruffin to present evidence regarding his ankle monitor because it would refute the timelines testified to by Lisa Knipp and Kite. [*Id*. at 73-74]. He also asked Ruffin to contact Ron Babbit to present testimony that would contradict Knipp and explained that subpoenaing Glore was important to his case. [*Id*. at 74]. None of this potentially exculpatory evidence was presented at trial.

Further, the testimony of Ms. Atteberry at the evidentiary hearing makes clear that Lefall raised some of these concerns even prior to trial. When Ms. Atteberry met with Lefall at the David L. Moss correctional facility, Lefall provided her with a list of concerns to convey to Ruffin. [*Id*. at 225]. Ms. Atteberry testified that she communicated this list to Ruffin after the meeting. The list of concerns included, among others, that Lefall planned to go to trial and to testify on his own behalf [*Id*. at 76], that he wanted Glore to be subpoenaed [*Id*. at 228], and that he wanted to know about the female in apartment B [*Id*. at 228].

Even though Ruffin requested to interview Glore, according to her attorney, Mr. DeMuro, Ruffin did not ask Mr. DeMuro to accept a subpoena for her trial testimony. [*Id*. at. 29].

In order to determine whether Ruffin's failure to investigate or present potentially exculpatory evidence constitutes ineffective assistance of counsel sufficient to merit a new trial, the Court must first determine whether counsel's performance was deficient. In order to be deficient, counsel's performance must have fallen below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

Here, Lefall provided his counsel with key information that could refute the government's case against him. He told Ruffin that a student loan check could explain the pictures of cash. Ruffin dismissed this idea because the deadline to provide such evidence to the

government had passed. However, in such circumstance, where a defendant brings to counsel's attention key exculpatory evidence after the deadline for production, counsel would have many options. For example, counsel could move for a continuance of the trial date to accommodate production of the newly discovered evidence. Certainly, when the defendant offers a facially credible statement that exculpatory evidence exists, reasonably competent counsel would at minimum investigate the client's assertion that the evidence exists and could be exculpatory. Here, counsel made no attempt either to investigate further or to request the Court to accommodate the new evidence. Similarly, counsel did not investigate the evidence Lefall raised regarding his ankle monitor, nor did counsel interview Babbit to determine whether the evidence and testimony would undercut the testimony of Knipp, a key witness for the government. The failure to investigate and present potentially exculpatory evidence certainly points to deficient representation.

In the second step, the Court must determine whether counsel's deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694. Though it is difficult to properly weigh evidence that was not brought before the Court, if Ruffin had investigated and presented the exculpatory evidence Lefall suggested, there is at least a reasonable probability that the evidence would have raised a reasonable doubt as to the defendant's guilt. The ankle monitor data could have undercut a key witness for the government by refuting her timeline as to Lefall's whereabouts. Further, the student loan check could have provided the jury with an alternative and far less damaging interpretation of the photos of Lefall with large amounts of cash. Together, there is a reasonable probability that this exculpatory evidence could have provided a different outcome to the trial.

It is less clear that the testimony of Glore would have produced a different result at trial. Although it was deficient for Ruffin not to interview Glore, Lefall's co-defendant, when he asserted that she could provide exculpatory information, the omission fails to satisfy the second requirement of the *Strickland* test. Even if Ruffin had interviewed Glore, Ruffin likely would not have presented her as a witness. Therefore, the jury outcome most likely would not have been different. Lefall himself stated in a January 25, 2014, phone call to his sister that Glore could have chosen to testify against him and did not:

> MR. LEFALL: She's in jail. I mean, I'm the reason she's in jail, sis. I mean, I feel bad about that, but she could have testified on me and she didn't . . . her family is mad at her because she didn't testify on me.

[Evid. Hrg., Gov't Ex. 22, Call No. 3 at 5-6]. Given that Lefall's own interpretation of Glore's testimony could have incriminated Lefall, this Court cannot hold that had Ruffin properly investigated the possibility of Glore testifying, the jury would have reached a different verdict.

**B. Failure to Review Discovery Provided by the Government**

In Lefall's case, there were at least three waves of discovery—the initial discovery, the discovery Atteberry received, and the "big stack" of discovery Ruffin received on the Friday prior to trial. Ruffin reviewed the initial discovery with Lefall on December 16, 2013, but Lefall did not have the opportunity to review any further discovery after that point before trial.

On December 3, 2013, for the first time, Ruffin attempted to review with Lefall the initial discovery that the government provided. However, his computer malfunctioned, and he was not able to review the materials with is client. Ruffin described the discovery to Lefall as consisting of phone conversations, photos, and a few other items. Specifically, there was a photo

9

of Lefall holding money. [Evid. Hrg. 40]. The December 3rd meeting between Lefall and Ruffin lasted a mere 30 minutes.

On December 16, 2013, Ruffin visited Lefall again at the David L. Moss Detention Center to review the initial discovery the government provided. On this occasion, Ruffin's computer did not malfunction, and they were able to review the discovery. [Evid. Hrg. 45]. This meeting lasted around three hours. [Evid. Hrg. 47]. This was the last time Lefall reviewed discovery before trial.

Lefall testified that the government presented evidence at trial that he had never seen before, including a picture of Glore in a bank, and that Ruffin seemed shocked at the evidence as if he had also never seen it before. [Evid. Hrg. 79-81].

At trial, there were several indications that not only did Ruffin fail to review the discovery with Lefall, he himself never reviewed all of it. At one point, Ruffin stated to the Court, "Well, Judge, I just – I don't have that data. I mean, it may be somewhere buried in all these materials I received from the government." [Tr. Tran. 485]. Later in the trial, Ruffin was cross-examining the case agent regarding phone numbers, and the subject of an e-mail with a scan of a signature card was mentioned. The following exchange took place before the jury:

> Ruffin: Is that something that's been provided to me?
> Witness: I don't know. I e-mailed it on after I received it.
> Ms. McCormick: I can answer that, Your Honor.
> The Court: Please do.
> Ms. McCormick: It was provided. We forwarded it to you, and then when you came to my office last Friday, I gave you copies.
> Ruffin: The big stack?
> Ms. McCormick: Yes.
> Ruffin: Big Stack. Okay. [Tr. Tran. 503-504].

By failing to review all of the evidence before trial and failing to review the evidence with his client, Ruffin's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. His unfamiliarity with the evidence led him to being unprepared to cross-examine witnesses effectively. DeMuro, attorney for Lefall's co-defendant, testified that without reviewing discovery, counsel cannot prepare for trial, or prepare for a plea, or be a lawyer in the case. [Evid. Hrg. 21]. He testified that reviewing discovery quicker rather than later is "one of the most important things you can do in a criminal case." [*Id*. at *20*]. Atteberry, a witness for the government, testified that it was imperative to review discovery with a client prior to trial. [Doc. No. 226, 230, 231]. Atteberry also testified to an attorney's options when a large amount of discovery is received just before trial. She testified that a defense attorney could ask the Court to continue the trial, or she should ask the Court to exclude the evidence from the trial. [Doc. No. 233]. Here, Ruffin elected neither option. Atteberry further testified that in a case with multiple waves of discovery, this would result in additional visits with a client to review discovery. [Evid. Hrg. 237]. Here, Ruffin only reviewed the initial discovery with Lefall. Lefall did not have the chance to review any other subsequently produced discovery prior to trial.

Had Ruffin reviewed all the discovery the government produced, there is a reasonable probability that the outcome of the trial would have been different. As the government described, Ruffin pursued a trial strategy that included vigorous cross-examination of the government's witnesses and raising objections. [Doc. No. 169 at 39]. Without knowledge of the evidence in discovery or even the exhibits the government referred to in witness testimony, Ruffin was incapable of identifying inconsistencies in the witnesses' testimony and properly cross-examining them. Further, Ruffin's credibility with the jury was inevitably harmed when it was pointed out in front of the jury that he had in fact received the discovery he claimed to be

unaware of. This harm to his credibility undermined his ability to be successful in any defense strategy he would pursue.

## C. The "Pimp Defense"

Lefall testified that on January 16, 2014, after Ruffin returned from Mexico, Ruffin and Lefall met again, this time for less than ten minutes. They discussed Ruffin's proposed defense that pictures of Lefall with large sums of cash could be explained if he told the jury Lefall was a pimp. After Lefall objected to that defense, Ruffin allegedly stormed out of the meeting. [Evid. Hrg. 64-65]. Later, Ruffin assured Lefall that they would not use the so-called "pimp defense" at trial. [*Id*. at 79].

However, in his closing argument, Ruffin suggested to the jury that Lefall being a pimp could explain the pictures of cash. [Tr. Tran. 591-592].

A defendant who alleges ineffective assistance of counsel has the burden of proving that counsel's alleged deficient performance was not based on a valid strategic choice. *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002). In *Bullock*, the Court stated: "[i]ndeed, we have explained that 'strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong.'" *Id*. at 1047.

Here, the Court must determine whether Ruffin's suggestion to the jury that Lefall was a pimp was a completely unreasonable strategic decision. The Court considers the fact that no evidence was presented at trial to suggest that Lefall actually was a pimp. The Court also considers the fact that Lefall expressly told Ruffin he did not authorize him to use the defense and finds that it was a completely unreasonable strategic decision. After Ruffin's closing argument, the jury was left with two possible conclusions. Either the government correctly asserted that Lefall received the money in connection with methamphetamines or Ruffin

correctly asserted that Lefall was a pimp. With no evidence to support the alternative Ruffin provided, the jury was led to side with the government.

## II. Untimeliness of Lefall's Motion for New Trial

Lefall was convicted on January 24, 2014. It was not until July 13, 2014, that Lefall filed a Motion for New Trial, alleging ineffective assistance of counsel. [Doc. No. 142]. The time to file a Motion for New Trial is established in Rule 33(b) of the Federal Rules of Criminal Procedure. When a motion is grounded on newly discovered evidence, the motion must be filed within 3 years after the verdict or finding of guilt. However, pursuant to Rule 33(b)(2), a motion based on any other grounds must be filed within just 14 days after the verdict or finding of guilt. Fed. R. Crim. P. 33(b)(2).

In the government's response to Lefall's Motion for New Trial, the government claims that the motion is jurisdictionally barred as untimely because it was not filed within 14 days of the verdict. [Doc. No. 150 at 16]. The government argues that the motion would only be timely if it were grounded in newly discovered evidence. The Defendant could not satisfy the five-part test[2] to prevail on his motion for a new trial based on newly discovered evidence, according to the government; therefore, his motion should be denied.

The Court agrees that Lefall's ineffective assistance of counsel grounds fit awkwardly into the test the Tenth Circuit established to prevail on a motion for a new trial grounded in

---

[2] "When a motion for a new trial is based on newly discovered evidence, the defendant is usually required to show that: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal." *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997); (quoting *United States v. Stevens,* 978 F.2d 565, 570 (10th Cir.1992)).

13

newly discovered evidence. However, the Court need not go so far in order to grant Lefall's motion for a new trial.

In 2005, the United States Supreme Court rendered a decision that departed from the doctrine that Rule 33 time limits are jurisdictional, a development that the government does not acknowledge in its briefing. *Eberhart v. United States*, 546 U.S. 12, 12 (2005). The United States Supreme Court held, "We break no new ground in firmly classifying Rules 33 and 45 as claim-processing rules, despite the confusion generated by the 'less than meticulous' uses of the term 'jurisdictional' in our earlier cases. *Id*. at 16 (citing *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004)). Rule 45 of the Federal Rules of Criminal Procedure provides that "When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made: (B) after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B).

The Tenth Circuit Court of Appeals held in *United States v. Smith* that though a motion for a new trial grounded on any reason other than newly discovered evidence must be filed within seven days[3] after the verdict, "[i]f a party fails to move for a new trial within this time period, 'the court on its own may extend the time . . . if the party failed to act because of excusable neglect.'" *United States v. Smith*, 311 F. App'x 82, 83-84 (10th Cir. 2008) (quoting Fed. R. Crim. P. 45(b)(1)(B).

Here, the Court finds that the delay in the filing of the Motion for New Trial constituted excusable neglect. Lefall testified that despite Ruffin's promise to see him within a couple of days after the trial, Ruffin did not see him until about a month later, on February 19, 2014, long after the fourteen-day period to file a motion for a new trial had passed. [Evid. Hrg. 85-88]. Lefall did not know how to file motions on his own, and specifically, he did not know how to file

---

[3] Rule 33 now provides 14 days for filing. Fed. R. Crim. P. 33(b)(2).

a motion for a new trial or a Rule 29 motion. [*Id*. at 86, 91]. Even when Lefall and Ruffin did meet on February 19, 2014, Ruffin did not discuss motions, appeal, or the Presentence Investigation Report. [*Id*. at 88]. At this meeting, Ruffin informed Lefall that he did not want to be his lawyer anymore. [*Id*. at 88]. Lefall testified that Ruffin stated, "I worked really hard for you, and this is how you repay me." [*Id*. at 88].

Ruffin did not move to withdraw until February 21, 2014, almost one month after the verdict was entered. [Doc. No. 122]. During that month, Ruffin did not file any post-trial motions on behalf of Lefall. The Court appointed James Fatigante to represent Lefall one month after the verdict. [Doc. No. 124]. The trial transcript was secured approximately one and a half months after the verdict, on March 6, 2014. [Doc. Nos. 125-130]. On April 9, 2014, Fatigante filed a motion with this Court to reschedule Lefall's sentencing hearing, due to the fact that Fatigante had been working to obtain Ruffin's client file, but thus far had been unsuccessful in his efforts because of Ruffin's passing. [Doc. No. 132]. Ruffin's file was not secured until approximately three months after the verdict. [Doc. No. 154 at 2]. It is excusable because of Ruffin's deficient representation that Lefall was unaware of the post-conviction rights that a criminal attorney would normally discuss with his client after trial. In fact, the failure to file the motion is itself another symptom of the ineffective assistance Lefall received. Even once Fatigante was appointed to represent Lefall, his delay in filing the motion was excusable because of the difficulty in obtaining the client file after Ruffin's passing. It was only once Fatigante was able to obtain and review the file that Lefall could feasibly assert a Motion for New Trial.

Pursuant to the United States Supreme Court's decision in *Eberhart*, 546 U.S. at 16, this Court may extend the deadline to file a motion for new trial because of excusable neglect. The

Court finds that though Lefall's Motion for New Trial was filed out of time, the late filing was due to excusable neglect and an extension of the deadline is justified.

## CONCLUSION

Effective assistance of counsel is a cornerstone of the fundamental right to a fair trial. In this case, the defendant was denied that fundamental right because of the deficient representation his attorney provided. His attorney failed to consult with his client and to investigate the potentially exculpatory evidence his client identified. He failed to review the discovery the government provided and admitted as much before the jury. His attorney even made an unsubstantiated accusation to the jury that Lefall was in fact a pimp. Each of these errors in representation alone falls below an objective standard of reasonableness. Even Ruffin's peers testified that reviewing discovery and discussing discovery with one's client is fundamental to representation in a criminal trial. Although each deficiency alone is sufficient to justify a new trial, together they form a picture of the clearly ineffective assistance of counsel that Lefall received. This Court must find that there is a reasonable probability that the outcome of the trial would have been different had Lefall's counsel not baselessly accused his client of being a pimp in his closing argument before the jury, had he been prepared to present exculpatory evidence, and had he cross-examined the government's witnesses effectively, using his knowledge of the discovery materials.

THEREFORE, the Court hereby GRANTS Defendant's Motion for New Trial.

James H. Payne
United States District Judge
Northern District of Oklahoma